726

In re Antonio Piñero Rodríguez, Respondent.

No. 71. Argued April 27, 1948.—Decided May 18, 1948.

*Antonio Piñero Rodríguez, pro se. J. Rivera Barreras, Prosecuting Attorney,* for the People.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

The Attorney General of Puerto Rico, through the *Fiscal* of this Court, filed a complaint against·Attorney Antonio Piñero Rodríguez containing twelve charges as a result of which he has instituted the present disbarment proceeding. The respondent was notified of the complaint and in his answer merely set forth (*a*) that as to the eighth charge of the complaint the *Fiscal* admits that the internal revenue stamps which were missing in the deeds of his notarial protocols were delivered by the respondent to the Keeper of General Archives of the District and that the latter affixed and cancelled them in the proper deeds; that a majority of the stamps missing were of twenty-five cents and this was due to an erroneous computation and not to bad faith; (*b*) that the other violations of the Notarial Act alleged in the complaint are similar to those committed by Attorney Pablo Andino Espejo (*In re Andino*, 67 P.R.R. 78) and that this Court held in that case that none of them involved the commission of fraud or of any public offense, nor that any person has been prejudiced by the lack of care on the part of the notary, and (*c*) that the

respondent places himself at the disposal of this Court to comply with and abide by any decision that might be rendered, "taking into consideration the complaint, the sworn statement given by the respondent before the Hon. *Fiscal* as well as the allegations in his answer, without a hearing."

When the *Fiscal* was served with respondent's answer, he informed the Court, in writing, that the other violations of the Notarial Act specified in the complaint and which according to the respondent are similar to those in *In Re Andino, supra,* are different from the facts which gave rise to the complaint therein and that in order to enable this Court to so determine, a hearing should be had.

We then allowed the respondent a term within which to inform this Court, in writing, whether he insisted in submitting the case on the pleadings and without a hearing. On April 21, 1948 the respondent filed a motion stating that "he insisted that this court decide the present case without a hearing and he so prayed."

Thus, and by express motion of the respondent the case has been submitted to this Court on the charges of the complaint and on the answer thereto without a hearing.

It if should be true that, as alleged by the respondent, the charges specified in the complaint, except the eighth, are similar to those in *In re Andino, supra,* our decision in this case would prove an easy task. Nevertheless, a slight examination of the charges in both cases clearly shows that there is no such similarity. A summary of the charges in the present case shall so demonstrate.

The first charge refers to the protocol of 1935, which consists of three volumes. It is alleged in the complaint that the last deed appearing in the third volume is No. 125 executed on *August 16, 1935,* without the closing memorandum; that said deed No. 125 was executed by Doña Georgina Ferrer Pérez, doña Margarita González, don Alfredo Feliciano and don José Padín. Yet the index sent to the District. Court

of Arecibo by the respondent (photostatic copy is attached to the complaint) shows that deed No. 125 was executed by Emma Miró and José Padín on *July 6, 1935;* that although deed No. 125 appears as having been the last one executed in the third volume of 1935, the protocol of that year does not contain the deeds executed before the respondent during the period between June 15, 1935 and July 28, 1935, according to the notarial indices sent to said court, and, lastly, that the respondent did not protocol deeds No. 126 to No. 173, executed before him from June 15 to December 8, 1935, as the same appear reported in the notarial indices whose photostatic copies are attached.

The first charge is serious. It is not only the discrepancy between the date and the names of the parties in deed No. 125, but it also charges the respondent with having failed to make the protocol of forty-seven deeds executed before him during the period between June 15 and December 8, 1935. Respondent's silence as to this charge and his failure to explain in the preliminary investigation where the deeds are,[1] implies that, either the deeds were never bound in the fourth volume of 1935 or, if they were, that said fourth volume has been lost. The bare fact is that neither the volume nor the deeds were delivered by the respondent to the

---

[1] In the sworn statement given by respondent before the *Fiscal* in the preliminary investigation of this case and which respondent includes as part of his answer to the complaint, on being examined as to these deeds, the following appears:

''Q.—In the last volume, that is, the one containing deed No. 125 mentioned above, the closing memorandum does not appear. . . .

A.—I could not say.

Q.—According to that protocol it seems that you executed other deeds during that year.

A.—It could be.

Q.—Could you say where that other protocol is, if it exists?

A.—No, sir.

Q.—Do you know if you executed other deeds between August 16, 1935 and December of that same year on which date the protocol should have been closed?

A.—Perhaps I did.

Keeper of General Archives. The unexplained disappearance of these deeds may be of serious legal consequence to the parties executing the documents and possibly to third persons. The first charge was established and it not only shows a gross negligence on the part of the respondent but a violation of the Notarial Act in the discharge of his duties as a notary.

In the second charge it is alleged that ninety-six deeds executed before him as notary and which appear in the three volumes of the protocol of 1935 do not agree in their numbers, dates and names of parties with the numbers, dates and names of parties in the deeds which he reported in the notarial indices sent by him to the District Court of Arecibo as having been executed before him. This charge was established by photostatic copies of said indices and because the respondent gave no explanation in his sworn statement in relation thereto.

The third charge sets up that the respondent failed to state in his notarial indices which he sent to the court the date of execution of deeds Nos. 160 to 173 executed before him from October 13 to December 8, 1935. This charge has been confirmed by said indices.

The fourth and fifth charges allege that the respondent

---

Q. And what has become of that protocol or of those deeds?

A.—Well, I really did not deliver them, my wife did, and I thought that all the protocols had been delivered. That is the truth.

. . . . . . . . . . 

Q.—I say, at that time did you continue practicing as notary from August 16, 1935 to December of that same year?

A.—Until 1945 when I held the office of Municipal Judge of Río Piedras.

Q.—On that date, on August 16, 1935, until December of that same year, were you in Puerto Rico?

A.—I have always been in Puerto Rico

Q.—Then, necessarily you might have executed other deeds?

A.—I am talking by memory.

Q.—But is there any fact which might make you remember whether during those months specifically you executed any deeds?

A.—No, sir.

allowed, through inexcusable carelessness and negligence, that fifteen deeds of the protocols of 1934 and 1935 and seven deeds of the protocol of 1942 be destroyed by moths and some acid, respectively, and of these, eight deeds are in such bad condition that their contents can not be read and, therefore, no copies thereof can be issued. The respondent merely stated that this destruction was due to the rain and moths.

It is alleged in the sixth charge that the signatures of some of the parties do not appear in six deeds executed before the respondent in 1935, 1940, 1941, 1942 and 1945, and in the ninth, that in 119 deeds executed from 1939 to 1945 respondent did not require the parties to stamp their fingerprints or the witnesses to affix their initials at the folios of said deeds. The only explanation given by the respondent in his testimony is that these facts were due to an oversight or that the parties did not appear. These charges have been established and they involve violations to §§ 9 and 14 of the Notarial Act, the latter as amended by Act No. 7 of March 23, 1937. As to the legal consequence of these violations, § 20 of the Notarial Act provides that any public instrument shall be null and void ". . . where the signature of the parties and witnesses, . . . .when required, do not appear." And in *Rosario* v. *Registrar*, 59 P.R.R. 430 we held that "the legal

Q.—But you do not know where the protocol or the deeds corresponding to the period between August 16, 1935 and December, 1935 are? Do you know?

A.—No, sir, right now I *do not know*.

Q.—Did you see the memorandum that Judge Cordovés Arana wrote in volume III of the protocol corresponding to the year 1935 where he states that: There is one volume missing for the year 1935 for volume III does not contain the closing memorandum and it only contains deeds up to the month of August.

A.—I did not see it. The protocols are under the custody of the Keeper of General Archives. I have not seen them for I only brought to him the stamps which I was told were missing.

Q.—But you told me you knew of the report.

A.—Yes, but I did not mean that I had seen the protocols.

Q.—Did you see the note?

A.—No, sir.

requisite of stamping the fingerprints is of the utmost importance, since in that way, in so far as the parties who can not or do not know how to sign are concerned, the lawmaker has succeeded in imparting to the public instrument the seal of indisputable authenticity, in accordance with the latest dictates of science. Indeed, fingerprints can properly take the place of a signature.'' We also held that a deed lacking the fingerprints is void even if the contract in itself is not, if it contains the requirements enumerated in § 1213 of the Civil Code.

The seventh and eleventh charges consist in that in 22 and 11 deeds respondent used numbers to indicate the dates and the area of properties, respectively. The respondent accepted these facts.

The eighth charge refers to internal revenue stamps that were not affixed and cancelled by the respondent in a large number of deeds. We accept the explanation given by the respondent that this was due to errors in calculating the amounts of the stamps to be cancelled in said deeds rather than to bad faith or intent to defraud the public treasury. In their majority the stamps left uncancelled were of twenty-

---

Q.—And has Judge Cordovés not asked you to deliver the deeds or the volume missing?

A.—I have not seen him, only when I took the stamps.

Q.—Have you any other protocol at your house?

A.—I do not think so.

.    .    .    .    .    .    .    .    .    .

Q.—But colleague, do you not remember specifically whether instead of three there were four volumes in 1935?

A.—I do not remember. If I say that I do I would not be saying the truth with certainty and if I say that I do not, it would be the same.

Q.—Could you not say for sure whether the deeds corresponding from August 16, 1935 to December of that same year were delivered to Judge Cordovés Arana for his inspection?

A.—I cannot say for sure.

Q.—And you do not know where they actually are?

A.—Actually I do not know.''

five cents and all of them were affixed and cancelled by the Keeper of General Archives when respondent delivered the stamps to him.

The tenth charge alleges that the respondent made corrections in twenty-eight deeds executed before him during 1941 and 1944 without mentioning them at the foot of said deeds. The respondent admitted these facts. This constituted a violation of § 13 of the Notarial Act.

Lastly, the twelfth charge alleges certain deficiencies and irregularities committed by the respondent such as the lack of signature of the witnesses, failure to name the witnesses, discrepancy between the name of one witness and the person signing the deed, failure to state the name of the wife of a party and several others. The respondent admitted or gave no explanation whatsoever as to these irregularities.

The facts stated in the complaint have been established either by admissions of the respondent himself or by his silence in giving any satisfactory explanation with respect thereto. They show not only lack of care but gross negligence on the part of the respondent in the discharge of his duties as a notary public.

Taking into consideration the attitude assumed by the respondent in frankly accepting the irregularities in the discharge of his duty as notary public and, when notified of the complaint, in having placed himself at the disposal of the Court to comply with and abide by the decision rendered, without a hearing, the respondent shall be suspended from practice as attorney-at-law and notary public for a period of two years.

An order shall be entered to that effect.

Mr. Justice De Jesús did not participate herein.